## Charles Ford *v.* David Knipe, Appellant.

*Negligence—Explosion of mill stones—Question for jury.*

In an action to recover damages for personal injuries caused by the explosion of burr stones in a grist mill, the case is for the jury where the evidence for the plaintiff tends to show that he was lawfully on the premises ; that the governor of the engine which ran the mill would occasionally refuse to start when the steam was first applied ; that the man in charge of the engine was an inexperienced hand who, finding the burr stones were running too fast, turned corn upon them to lessen their speed, and ran at once to turn off steam ; that the explosion occurred before he reached the engine house, and that he then found that the governor had stopped while the engine was running with unusual speed.

Argued Feb. 2, 1897.    Appeal, No. 555, Jan. T., 1896, by defendant, from judgment of C. P. Montgomery Co., June T., 1896, No. 86, on verdict for plaintiff.    Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Trespass to recover damages for personal injuries.    Before WEAND, J.

At the trial it appeared that on August 14, 1895, the plaintiff went to defendant's grist mill, and while lawfully on the premises, was injured by an explosion of the burr stones of the mill.    The evidence tended to show that Willian Ott, the man in charge of the engine at the time was an inexperienced hand. There was evidence that the governor of the engine would occasionally refuse to start when the steam was first applied. Immediately before the explosion Ott, observing that the stones were going too fast, let corn down upon them to check their speed.    He then hastily ran to turn off the steam, and found that the governor was standing still, while the engine was running very fast.    Further facts appear from the charge of the court, which was in part as follows :

It has been explained to you what the province of the governor is,—to regulate the running of the engine by guarding as to the amount of steam that passes into the engine, and to regulate its movements.    It is said on the part of the plaintiff that this governor was defective, because it stopped or would not

start.   Is there any testimony in this case to show that this governor ever refused to operate except when the engine was first started?   Can you recollect any testimony upon that point, unless it is what Mr. Ott testifies to after the explosion occurred?   If there is not, then we have the fact that the governor occasionally would refuse to start when the steam was first applied.   What effect did that have upon the engine?   Mr. Ott and the others who ran it state that whenever that occurred a slight push of the hand would start it, and that then the movement was regular, and that nothing unusual happened afterward, and the testimony of the experts and of the engineers, who had it in charge is that this frequently occurs in engines, by reason of the oil, which may drip upon the belting or ·upon the cylinder, becoming hard; but that the moment a little force is given to the governor it starts, and that that cause will not subsequently operate during the running of the engine.   This is an important point for you to remember, because in my opinion it may have an important bearing upon this case.   From the fact that this governor, as testified to here, occasionally refused to start when steam was first started, can you find that this was such a defective engine as that the defendant should be chargeable with negligence in keeping it there?   If you find it was not, then that branch of the case drops out.

Secondly, was the engineer competent or incompetent?   In the view that I take of this case that has no important bearing upon your deliberations, for whether he was competent or incompetent, unless the accident occurred by reason of something that he did on that particular morning, the defendant would not be chargeable on that ground.   No matter what his previous knowledge was, what did he do on that particular morning, which the jury can find was negligence?   If he did nothing, then that branch of the case becomes immaterial.   What did he do on that morning?   He says that he started the fires, that the governor halted, that he started it and then all ran well.   Was there anything wrong in that?   Before he left that engine house, if you believe his testimony, and he is the important witness for the plaintiff, the engine was running all right and he saw nothing unusual in its movements.   What other act of negligence is attributable to him?   If this was not negligence, if you cannot discover that he did anything that was wrong there,

then what else did he do from which you can find that he was
negligent? After leaving the engine house he went to the
building in which the mill was situated. It was part of his
duty to attend to this mill. He says that he went in there, he
saw that the engine was running fast, and in order to check its
speed he allowed the corn to pass into the mill for the purpose
of lessening the speed. Was this an act of negligence? If it
was not, then what other act is there for which the defendant
can be chargeable? It is claimed by the plaintiff that the very
fact that he thus turned corn into the stones at a time when
they were revolving rapidly was an imprudent and improper
act, because that act caused the explosion. Is that the fact?
On the part of the plaintiff there is no testimony that I can
recall, although that is entirely for you, unless it is the testi-
mony of Ott, that the introduction of the corn here would cause
the explosion; but on the part of the defendant you have the
testimony of witnesses that this very fact tended to decrease
the speed, and therefore that that alone would not cause the
explosion, but it would be almost the same, if you believe their
argument, as turning off the steam to that extent. Is this the
true version of the affair? Was that act of Ott in turning
that corn in at that time such an act of negligence as that the
defendant should now be held responsible for the damage that
ensued? If it was not, then it is for you to say where you can
find any act of negligence on the part of Ott. Ott testifies that
after he left the mill after the explosion he immediately went
to the engine house to shut off steam, and that he there discov-
ered that the governor had stopped, and here you will see the
importance of this action of the governor as I have previously
referred to it. Here is a time when we have the governor stop-
ping at a time when the engine has been running for some time.
What stopped that governor? Was it its defective condition,
or was it the explosion? If the explosion occurred not because
the engine was running too fast, or not because of the introduc-
tion of this corn into the mill, then is it the fact that the force
of the explosion and the taking off of that amount of power
from the engine caused such action to take place as lessened the
tension of the belt, or by a jar stopped the action of the gov-
ernor? This is important because in this case it may become
an important question for you to find as to whether the explo-
sion caused this governor to stop, or whether the stopping of the

governor caused the explosion, and therefore I again call your attention to the importance of Ott's testimony that when he left the engine it was working all right, and to the testimony of the others that there was no other cause for the governor to stop in its operations except this which sometimes occurs by reason of the oil. Then it is for you to say what could have stopped it at that time, unless it was the explosion itself. If you shall find that the machinery was defective, but that that did not cause the explosion, then there could be no recovery on that account, and if you shall find that there was no act of negligence on the part of Ott, then there can be no recovery. You must find that this explosion was caused either by one or the other of these circumstances, that is, by reason of the defective machinery, or by reason of the negligence of Ott. In this case we are painfully aware that an explosion occurred, but it is not necessary, as claimed by the plaintiff, that the defendant should show you why it exploded. It is simply his duty to rebut the allegation of negligence on his part, and if he has convinced you by the weight of the testimony, or if the plaintiff has failed to convince you by the weight of the testimony that the explosion was caused either by the defective machinery or the negligence of Ott, then the defendant need go no further. Because in the first instance the mere fact of an explosion would not be sufficient to warrant a recovery, and the duty would devolve further upon the plaintiff to assign a reason why it exploded, so as to show there was negligence on the part of the defendant. These are the main facts in this case. You will recall all the testimony bearing upon the subject, and after a careful deliberation endeavor, in the best manner you can, to ascertain, if such a thing is possible, what caused the explosion. If you fail to assign a cause for it, then the plaintiff cannot recover.

Defendant's point and answer thereto were as follows:—
That under all the evidence your verdict must be for the defendant. *Answer:* I cannot so charge you, because there are certain questions of fact here which you must pass upon and which the court cannot assume. You can find in favor of the defendant if you shall find that neither he nor his employee were negligent, or that the accident was not caused by any defective machinery, and, as I have already said, you shall find in his favor unless the plaintiff has established by the weight of the evidence that the accident was caused either by the negli-

gence of the employee, or because of the defective character of this machinery.

Verdict and judgment for plaintiff for $1,150. Defendant appealed.

*Error assigned* was answer to point as above.

*Edward F. Kane*, for appellant.—The case was submitted to the jury without evidence, and the verdict has no better foundation than a guess, or at most, mere possibilities. This is error: R. R. v. Schertle, 97 Pa. 450; Christner v. Coal Co., 146 Pa. 71; McAvoy v. Penn. Woolen Co., 140 Pa. 1; Ford v. Anderson, 139 Pa. 263; Improvement Co. v. Munson, 14 Wall. 442; Stager v. Passenger Ry. Co., 119 Pa. 75.

*N. H. Larzelere* and *N. D. Tyson*, for appellee.—When upon all the evidence no question of fact is left in doubt, the trial judge should direct the verdict; but if there is a conflict in the evidence, the conflict must be decided by the jury before the legal value of the facts can be pronounced by the court; Cougle v. McKee, 151 Pa. 602; Hays v. Millar, 77 Pa. 238; Howetty v. R. R., 166 Pa. 607; Elkins v. McKeen, 79 Pa. 493; Hanover R. R. v. Coyle, 55 Pa. 402.

The theory of a mysterious explosion was not consistent with the proven facts. It was a theory born afterwards; it was speculative and conjectural, and condemned by the jury: Yeager v. R. R., 73 Pa. 124.

PER CURIAM, February 22, 1897:

The question whether or not the bursting of the burr stone was due to any negligence of the defendant was, of course, a question of pure fact. It was exclusively within the province of the jury to decide it, if there was any evidence more than a scintilla, in the cause. There was evidence both as to the condition of the engine and governor, and the running both of the burr stones and the engine which was claimed to prove negligence. We cannot say as matter of law that this evidence was no proof whatever on this subject. That could only be determined by the jury as a matter of fact. The question was carefully and correctly submitted to the jury by the learned court below, and we cannot say that this action of the court was erroneous.

Judgment affirmed.